IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

ROBERT O. DIGGS, JR.,                    )
                                         )
                    Plaintiff,           )
                                         )
vs.                                      )          Case No. 11-3286-CV-S-ODS
                                         )
JIM ARNOTT, et al.,                      )
                                         )
                    Defendants.          )

## ORDER AND OPINION GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment (Doc. # 21). The Motion is granted.

## I. BACKGROUND

Pending before the Court are three separate lawsuits filed by Plaintiff against Sheriff Jim Arnott and other members of the jail staff at the Greene County Sheriff's Department.   The suits have been consolidated.   (Doc. # 18).

### A. Procedural Background

Defendants' Motion for Summary Judgment was filed on July 6, 2012.[1]   On July 25, 2012, Plaintiff filed his First Motion for Extension of Time, (Doc. # 27), after which the Court granted Defendant an additional 90 days to respond to Defendant's Motion for Summary Judgment.  (Doc. # 28).   On October, 19, 2012, Plaintiff filed his Second

_____

[1] The docket reflects that Defendant's Motion was filed on behalf of Defendants Arnott, Jones, Murphy, Tim Smith, and Taylor.   However, the actual Motion states that it was filed by "defendants."   Because Plaintiff's three suits have been consolidated, the Court will treat Defendants' Motion as if it were filed on behalf of all remaining Defendants.

Motion for Extension of Time, requesting an additional 60 days to file a response to Defendant's Motion. (Doc. # 29). The Court granted Plaintiff's Motion and stated that because Plaintiff had been grated two lengthy extensions, "additional extensions will not be granted barring extraordinary circumstances." (Doc. # 32). Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment were to be filed on or before December 22, 2012. On December 21, 2012, Plaintiff filed his Third Motion for Extension of Time to file a response to Defendant's Motion for Summary Judgment. (Doc. # 34). The Court denied Plaintiff's Motion because of the absence of extraordinary circumstances. (Doc. # 35). To date, Plaintiff has not responded to Defendants' Motion. Because Plaintiff did not file a Brief in Opposition to Defendant's Motion for Summary Judgment, nor did he submit a listing of material facts to which he contends a genuine issue exists, Defendants' material facts are admitted. *See Norwood v. Potter*, 363 Fed. App'x 415, 416 (8th Cir. 2010); *see also Brown v. Frey*, 806 F.2d 801 (8th Cir. 1985) ("Pro se litigants are not excused from compliance with substantive and procedural law."); Local Rule 56.1(a) ("All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party."). The Court has considered Defendants' Statements of Undisputed Material Facts (Doc. # 22), which are supported by affidavits, and has drawn all inferences in favor of the non-movant.

## B. Factual Background

The following facts are derived from Defendants' Statement of Undisputed Material Facts ("DSUMF") (Doc. # 22). Upon entry into the Greene County jail, all inmates are provided with a written copy of the Greene County Jail Rules and Regulations ("Rules and Regulations"). DSUMF, ¶ 4. The booklet provides information on discipline and penalties for the violation of rules and informs inmates of the privileges and programs afforded them while incarcerated. *Id.* An inmate who violates jail rules and regulations may be placed in Disciplinary Segregation. DSUMF, ¶ 31. Further, the Rules and Regulations informs inmates that the stated goal of the jail is to provide a safe and secure

2

environment that promotes positive inmate behavior.   DSUMF, ¶ 5.   The rules state that the jail's goal is made possible through fair, impartial, and humane treatment of all persons incarcerated at the jail.   *Id.*

In addition to other information, the Rules and Regulations booklet informs inmates of a multi-tiered grievance-procedure including: Request to Staff Members; Informal Request for Remedy (Level #1); Informal Request for Remedy (Level #2); and Administrative Remedy Request (Level #3).   DSUMF, ¶ 6.   Each tier has a specific procedure that must be followed in order to file a grievance.

Inmates needing medical attention must fill out a "Sick Call" request between 7:00 AM and 7:30 AM, or they can submit them to pod officers.   DSUMF, ¶ 14.   The Medical Officer on duty reviews each Sick Call request and decides whether to refer the request to the jail physician.   DSUMF, ¶ 15.   All medical services are ordered at the discretion of the medical staff and/or physician.   DSUMF, ¶ 18.   If an officer observes a medical emergency involving an inmate, they are to notify medical staff and a shift supervisor. DSUMF, ¶ 39.   The shift supervisor then proceeds with the following procedure: call for an ambulance at the order of the medical officer, if necessary; notify dispatch who will call additional staff if requested to do so; contact the jail physician; immediately notify command staff; and administer first aid or call cardiopulmonary resuscitation as needed until the medical staff or management personnel arrive.   *Id.*

Jail policy requires that inmates who present with mental health problems, or who have previously presented to the jail within the previous twelve months with mental health issues, are placed in special housing pending risk assessment, treatment, and final disposition by the jail psychologist and/or the medical department.   DSUMF, ¶ 21, 24. The special housing allows for direct supervision by staff less than every fifteen minutes with documentation every fifteen minutes.   *Id.*   Further, television surveillance may be used in conjunction with verbal and physical checks.   *Id.*

Administrative detention status is a form of separation from the general population used when the continued presence of the inmate within the general population would pose a serious threat to life, property, self, staff or other inmates, or to the security or orderly operation of the facility.   DSUMF, ¶ 25.   Administrative detention is a

non-punitive status in which restricted conditions of confinement are required only to ensure the safety of the inmate or others, the protection of property, or the security or orderly operation of the facility.   DSUMF, ¶ 27.   Inmates in special management units receive their prescribed medications, clothing that is non-degrading, and access to basic personal items unless there is a danger to self-harm or harm to others.   DSUMF, ¶ 26.

### 1. Case No. 11-3290-CV-S-ODS

Plaintiff filed his *pro se* Complaint on August 8, 2011 in case no. 11-3290-CV-S-ODS against Greene County Justice Center, Sheriff Jim Arnott, Tim Smith, Harold Bengsch, Jim Viebrock, "Sartor", Officer Nay, Joe Mystrik, Lt. Danny, Captain Clayton, Joe Hutchtion, Sgt. Canter, Greene County, Lt. Howell, Lt. Mahy, Corporal Herman, and John Does 1-6.   Plaintiff alleges causes of action under 42 U.S.C. § 1983 seeking declaratory and monetary relief for alleged violations of the Fourteenth Amendment's due process clause and the Eighth Amendment by Greene County prison officials and employees.[2]   All Defendants in this action have been dismissed except for: Sheriff Jim Arnott; "Sartor"; Officer Nay; Joe Mystrik; Lt. Danny; Captain Clayton; Sgt. Canter; Lt. Howell; Lt. Mahy; Corporal Herman; and John Does 3-6.

Plaintiff alleges that on December 17, 2010, while housed as a pretrial detainee in the Greene County jail, he injured his big toe on his left foot after accidentally striking it on

---

[2] The Court recognizes that Plaintiff makes references throughout all three of his Complaints in this consolidated case of alleged equal protection violations.   However, after a careful review of the Complaints, the Court finds that Plaintiff has failed to state any claims under the Equal Protection clause because Plaintiff has not suggested that he was treated differently than similarly situated persons based upon his race, religion, or any other suspect class. *See Peck v. Hoff*, 660 F.2d 371, 373 (8th Cir. 1981) (per curiam) (inmate did not allege that he or class to which he belonged received treatment that was invidiously dissimilar to that received by other inmates, and without such allegation there was no basis for equal protection claim).

4

a door stop.  Complaint, p. 5.  The undisputed facts establish that on December 19, 2010, Plaintiff submitted a Sick Call request checking the box for both medical and mental health complaints.  DSUMF, ¶ 38.  Plaintiff stated: "I still have little bumps around my chest area and my big toe of my left foot is swollen & it hurts to put pressure on it." DSUMF, ¶ 38.

On December 22, 2010, jail medical staff examined Plaintiff and referred him to Dr. Wilkins, the jail physician.  DSUMF, ¶ 42.  The next day, Dr. Wilkins examined Plaintiff and ordered Plaintiff to undergo an x-ray of the left toe.  DSUMF, ¶ 43.  That same day, Plaintiff received an x-ray, which revealed a "dislocation of the distal phalanx of the great toe at the inter-phalangeal joint level."  DSUMF, ¶ 44.

On December 27, 2010, Dr. Wilkins reviewed the x-ray and concluded that Plaintiff suffered a dislocated toe.  DSUMF, ¶ 45.  Dr. Wilkins attempted to restore the toe to its normal position, but was unable to do so.  DSUMF, ¶ 36.  Dr. Wilkins referred Plaintiff to the Cox Health Systems Emergency Department for treatment of the dislocated big toe. DSUMF, ¶ 46.  Later that day, Plaintiff was transported to Cox South Emergency Department for treatment, after which Cox South Health Department referred Plaintiff to an orthopedic specialist at the Bone and Joint Center.  DSUMF, ¶ 47.

On December 30, 2010, Plaintiff was taken to the Bone and Joint Center in Springfield, Missouri for an orthopedic consult. DSUMF, ¶ 48.

On December 31, 2010, Plaintiff filed an Inmate Request Staff where he stated: "I did let the officer know when I hit my toe and that I was having pain I was told to put in a sick call about the pain and that what I did I didn't know it was injured I just know it was hurting however I did tell the guard on duty about what happened that why I was told to put in a sick call." DSUMF, ¶ 49.

On January 4, 2011, Plaintiff was taken to the Bone and Joint Center in Springfield, Missouri and underwent surgery for the dislocated big toe.  DSUMF, ¶ 50.  Plaintiff's postoperative instructions directed that Plaintiff was not to place any weight upon the toe and that the operative site should be elevated for the next 24 to 48 hours.  DSUMF, ¶ 51. The instructions did not require for Plaintiff to receive and utilize a wheelchair; Dr. Wilkins opined that Plaintiff could keep his toe non-weight bearing and elevated with the aid of

crutches.   DSUMF, ¶ 52.

After surgery, Plaintiff returned to the jail, and pursuant to the written policy of the jail division, he was placed in T4 special housing for reasons related to this toe surgery. DSUMF, ¶ 54.   Plaintiff could not be released from T4 special housing until he was released by the medical department.   *Id.*   Plaintiff expressed to jail staff that he did not want to be in T4 and continually asked to be sent back to C-pod.   DSUMF, ¶ 55.

On January 5, 2011, nurse Sartor reported in a Jail Incident Report that while passing out medication in the medical pod, Plaintiff complained about not receiving a wheelchair with a leg rest.   DSUMF, ¶ 56.   Sartor informed Plaintiff that he was not allowed to have a foot rest in the pod for safety and security reasons.   *Id.*   Sartor instructed Plaintiff to lie back down on his bunk and elevate his foot.   *Id.*   Plaintiff insisted on receiving a grievance form.   *Id.*   Sartor instructed Plaintiff to leave the medical carts so that Sartor could continue distributing medicine to other inmates.   *Id.* Plaintiff became insolent and refused to return to his cell and yelled obscenities at Sartor and then stood up out of his chair in an aggressive manner like he wanted to fight and yelled "don't you fucking talk to me like that."   DSUMF, ¶ 56.   The incident was investigated by Sgt. Canter to determine whether further disciplinary actions would be taken against Plaintiff.   DSUMF, ¶ 57.   The Rules and Regulations prohibits inmages from threatening another with bodily harm, acting insolent toward a staff member, or refusing to obey an order of any staff member.   DSUMF, ¶ 58.

On January 6, 2011, Sgt. Canter met with Plaintiff and other persons present at the time of the incident and reviewed video surveillance of the incident. DSUMF, ¶ 59.   Sgt. Canter concluded that Plaintiff had violated the Rules and Regulations.   *Id.*   Plaintiff was placed in administrative detention and put in T4-414 pending a hearing with the disciplinary hearing officer.   *Id.*   The next day, Lieut. Howell, with Sgt. Switzer present, conducted a disciplinary hearing wherein Plaintiff appealed being held in segregation for violation of the Rules and Regulations.   DSUMF, ¶ 60.   Lieut. Howell concluded that Plaintiff violated the rules as alleged in the incident report and was ordered to remain in administrative housing for 30 days, or until February 4, 2011.   *Id.*

Plaintiff alleges in his Complaint that he had previously filed a grievance

6

complaining of (1) unsafe conditions in the jail facility by not providing Plaintiff with proper footwear and by the metal door stops on the floor; and (2) the length of time it took for jail staff to provide Plaintiff with adequate medical care for a serious medical need. Complaint, p. 8. Plaintiff contends that jail officials placed him in administrative segregation in retaliation to his grievances.

Plaintiff also alleges that sometime after January 12, 2011, Joe Mystick refused Plaintiff his prescribed medication and his wheelchair was taken away. Complaint, p. 11.

On January 13, 2011, while jail staff escorted Plaintiff back to T-4 administrative housing, Plaintiff threw down his crutches and sat on the floor. DSUMF, ¶ 62. After a detention officer instructed Plaintiff to get up, Plaintiff replied that he was not "fucking moving" and that the officer could "kiss his fucking ass." *Id.* Two nurses came down from the medical unit to try to talk Plaintiff into cooperating. *Id.* After jail staff told Plaintiff that if he did not get up to go to T4 he would be placed in A-pod, Plaintiff complied and went to his cell in T4. *Id.* Lieut. Denny, a jail supervisor, concluded that the appropriate disciplinary action would be to place Plaintiff in a-207 and that he would receive recreation time alone. *Id.*

On January 18, 2011, an administrative captain's hearing was held to consider the appeal of the decision of the Disciplinary Hearing officer's finding of January 7, 2011. DSUMF, ¶ 61. Capt. Coonrod met with Plaintiff, reviewed the video of the incident, and concluded that Plaintiff violated the Rules and Regulations as stated in the disciplinary hearing report. *Id.* Capt. Coonrod ordered Plaintiff to remain in administrative housing, but stated that Plaintiff could receive a recommendation of early release on the next review date if he engaged in good behavior and had no further incidents. *Id.*

Plaintiff alleges in his Complaint that while he was housed in segregation, his cell was cold and unsanitary. Complaint, p. 10, 13. He argues he was denied adequate blankets, bedding, and clothing. *Id.*

On February 11, 2011, Plaintiff was released from the custody of the jail division of the Greene County Sheriff's Office. DSUMF, ¶ 63.

## 2. Case No. 11-3299-CV-S-ODS

Plaintiff filed his *pro se* Complaint in case no. 11-3299-CV-S-ODS on August 19, 2011, against Sheriff Jim Arnott, Tim Smith, Kenneth Clayton, "Howell", Officer Nay, Commissioner Harold Bengsch, Commissioner Jim Viebrock, and Officer St. Clair. Plaintiff's claims arise under 42 U.S.C. § 1983 and seeks declaratory, injunctive, and monetary relief for alleged due process and Eighth Amendment violations by Greene County jail officials and employees. All Defendants have been dismissed except for Kenneth Clayton and "Howell". Plaintiff alleges he was not receiving the appropriate amount of calories during Ramadan, which caused him to lose weight, that his internal grievances were denied, and that he was placed in administrative segregation as a result of his attempts to obtain the requisite amount of food.

The undisputed facts establish that Sgt. Switzer advised all staff at the jail that the observance of Ramadan would begin on August 1, 2011, and last for 30 days. DSUMF, ¶ 67. Staff members were informed of the meal changes for the inmates participating in Ramadan. *Id.* Plaintiff elected to participate in observance of Ramadan and Captain Clayton received this notification. DSUMF, ¶ 70-71. The jail utilizes the services of a dietician to aid in the preparation of meals for the inmates. DSUMF, ¶ 69. Inmates participating in Ramadan received a double portion of breakfast and then skipped the noon and evening meal tray served during daylight hours, but receive a sack lunch during the evening meal and return to their cell to eat their meal after dark. DSUMF, ¶ 72.

The average daily calories in a breakfast menu at the Greene County jail is 865 calories. DSUMF, ¶ 75. During Ramadan, each participant receives a double portion of breakfast consisting of 1730 calories. DSUMF, ¶ 76. The number of calories in a Ramadan sack meal includes: four peanut butter and jelly sandwiches consisting of a total of 1500 calories; two granola bars containing a total of 180 calories; one bag of pretzels of 110 calories; 4 ounce container of juice containing 80 calories; one fresh fruit containing 80 calories. DSUMF, ¶ 77. The total caloric intake for inmates participating in Ramadan was 3680 calories. DSUMF, ¶ 78. The typical caloric intake for inmates at the Greene County jail averaged between 2800 calories and 3200 calories. DSUMF, ¶ 79.

8

On August 4, 2011, Plaintiff filed a formal request for a remedy alleging he was losing weight because he believed he was not receiving adequate nutrition during Ramadan. DSUMF, ¶ 80. On August 10, 2011, J. Campbell, the kitchen administrator at the jail, received a grievance from Plaintiff stating his concern about his weight loss due to participating in Ramadan. DSUMF, ¶ 68, 81. That same day, Mr. Campbell informed Capt. Clayton of the caloric intake for the participants of Ramadan compared to the other inmates at the jail. DSUMF, ¶ 83. Mr. Campbell also informed Capt. Clayton that the Ramadan meals had been approved by a dietitian. DSUMF, ¶ 84.

On August 11, 2011, Capt. Clayton was informed by Detention Officer Joliff that Plaintiff had been trading his special lunches for regular food with another inmate. DSUMF, ¶ 85. It is against the written jail policy to trade food or eat another inmate's food. DSUMF, ¶ 86.

On August 12, 2011, Capt. Clayton informed Plaintiff that he was receiving 3680 calories a day during Ramadan, and that the normal diet for an inmate was approximately 2800 to 3200 calories. DSUMF, ¶ 87. Plaintiff was also informed that jail staff was aware that Plaintiff had violated the Rules and Regulations by trading food with another inmate and that he would be placed in special housing for violating the rules. DSUMF, ¶ 88. Plaintiff was placed in special housing beginning August 12, 2011 until August 31, 2011. DSUMF, ¶ 89. Plaintiff's weight was monitored while at the jail to ensure that he was not losing weight. DSUMF, ¶ 90.

### 3. Case No. 11-3286-CV-S-ODS

Plaintiff filed his *pro se* Complaint on August 3, 2011, in case no. 11-3286-CV-S-ODS, against Sheriff Jim Arnott, Administrator Tim Smith, Harold Bengsch, John Doe 1-3, Corporal Jones, Officer Taylor, and Sergent Murphy. Plaintiff brings his claims under 42 U.S.C. § 1983 seeking declaratory, injunctive, and monetary relief for alleged unconstitutional conditions of confinement. All the Defendants in this action have been dismissed except for Administrator Tim Smith, Corporal Jones, Officer Taylor, and Sergent Murphy.

The undisputed facts establish that on July 24, 2011, Plaintiff was again booked into the jail division of the Greene County Sheriff's Office. DSUMF, ¶ 64. Pursuant to jail policy, and because Plaintiff had previously reported an attempted suicide and previously reported receiving mental health treatment, Plaintiff was placed in special housing pending risk assessment, treatment, and final disposition by the jail psychologist or medical department. DSUMF, ¶ 65. Plaintiff had previously reported that he suffered from depression, bipolar disorder, and schizophrenia, and that he had attempted suicide on a previous occasion. DSUMF, ¶ 34. Plaintiff was released to the general population on July 25, 2011. DSUMF, ¶ 66.

Plaintiff contends in his Complaint, and Defendants fail to specifically address these allegations in their Motion for Summary Judgment, that while placed in special housing, he was given a thin gown, a single mattress with no bedding, and was refused a blanket. Complaint, p. 5-6. The cell was unsanitary and overcrowded with three other detainees. *Id.* Plaintiff argues the cell was cold, which caused him to suffer an asthma attack, and his fingers went numb. Complaint, p. 7. Finally, after Plaintiff requested to receive his prayer rug and holy Quran was denied, Officer Taylor and Corporal Jones allegedly told Plaintiff he was in the observation cell for mental health reasons and would not receive any other items other than his gown and mattress. Complaint, 6-7.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, on which that party will bear the burden of proof at trial." *Reed v. ULS Corp.*, 178 F.3d 988, 990 (8th Cir. 1999).

## III. DISCUSSION

Defendants argue they are entitled to summary judgment because they enjoy qualified immunity and because the undisputed facts demonstrate no constitutional violations occurred. The Court agrees with Defendants that Plaintiff's constitutional rights were not violated.

## A. Case No. 11-3290-CV-S-ODS

Plaintiff's alleges that after he accidentally injured his toe on a door stop, Defendants violated his rights to due process of law and his right to be free from cruel and unusual punishment by: (1) failing to have clear guidelines for jail staff to follow regarding emergency medical situations; (2) failing to provide adequate, timely medical care from the time of his injury through post-surgery recovery; (3) refusing to provide a wheelchair with a foot rest to allow Plaintiff to follow the doctor's order to elevate his foot; (4) refusing

to allow Plaintiff to have prescribed pain medication and revoking use of his wheelchair and providing only crutches; (5) ignoring his grievances regarding unsafe jail conditions resulting from not issuing proper footwear to detainees, having metal door stops on the floors, and the length of time it took the facility to provide Plaintiff with adequate medical care; (6) fabricating disciplinary violations against him in order to justify placing him in segregation confinement; and (7) while in segregation confinement, he was forced to stay in a cold and unsanitary environment where he was denied blankets, bedding, and adequate clothing.   Defendants argue, and the Court agrees, that they are entitled to summary judgment in case no. 11-3290-CV-S-ODS.

## 1. Deliberate Indifference to a Medical Need

Plaintiff argues that jail officials failed to provide adequate and timely medical care to his toe injury.   Further, Plaintiff argues that Defendants failed to have clear guidelines on how to confront and respond to medical emergencies.   Defendants move for summary judgment contending there is no evidence that they were deliberately indifferent to Plaintiff's medical condition.

Plaintiff's allegations occurred while Plaintiff was a pretrial detainee.   Accordingly, Plaintiff's claims are properly analyzed under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners.  *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).   However, "it is now settled that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety."  *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007) (internal quotations omitted).

To support his section 1983 claim, Plaintiff must show that Defendants were deliberately indifferent to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995).   The Eighth Circuit has defined a serious medical needs a "one that has been diagnosed by a physician as

requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos*, 73 F.3d at 176. To be deliberately indifferent, "a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hartsfield*, 491 F.3d at 397. Because the undisputed material facts establish that a physician diagnosed Plaintiff with a dislocated toe which required surgery, (DSUMF, ¶ 45, 50), this Court finds that Plaintiff's toe injury constituted a serious medical need. The Court now moves on to determine whether Defendants displayed a deliberate indifference toward that injury.

The undisputed material facts establish that Plaintiff placed a Sick Call request on December 19, 2010, wherein he stated: "I still have little bumps around my chest area and my big toe of my left foot is swollen & it hurts to put pressure on it." DSUMF, ¶ 38. A reasonably jury would not find that one would be put on notice that there is a medical emergency after an inmate states that his toe is swollen. Although Plaintiff alleges that two days before submitting a Sick Call request, he informed pod officers that he stubbed his toe, the undisputed material facts establish that Plaintiff did not personally know that he was injured. On December 31, 2010, Plaintiff filed an Inmate Request Staff where he stated: "I did let the officer know when I hit my toe and that I was having pain I was told to put in a sick call about the pain and that what I did I didn't know it was injured I just know it was hurting however I did tell the guard on duty about what happened that why I was told to put in a sick call." DSUMF, ¶ 49.

Nevertheless, the evidence shows that after receiving Plaintiff's Sick Call request, Plaintiff was provided with medical treatment and was seen by medical staff on December 22, 2010, (DSUMF, ¶ 42); a medical doctor on December 23, 2010, (DSUMF, ¶ 43-44); received an x-ray on December 23, 2010, (DSUMF, ¶ 44); Dr. Wilkens and the Cox Health System Emergency Department on December 27, 2010, (DSUMF, ¶ 45-47); orthopedic specialists at the Bone & Joint Center on December 30, 2010, (DSUMF, ¶ 48); and received surgery on January 4, 2011, (DSUMF, ¶ 50). Post-surgery, Plaintiff received a wheelchair while in jail, and later received crutches. DSUMF, ¶ 54, 62. Finally, the undisputed facts establish that the jail had clear guidelines on how to confront

13

and respond to medical emergency situations.   DSUMF, ¶ 14-15, 18, 39.

Even viewing the evidence in a light most favorable to Plaintiff, the evidence and sequence of events does not rise to the level of deliberate indifference to Plaintiff's serious medical needs.   Accordingly, the Court finds that there are no genuine issues of material fact as to the claim of a constitutional violation for failure to provide adequate medical care and Defendants are entitled to summary judgment on this claim.

### 2. Deliberate Indifference and Withholding Medicine and a Wheelchair

Plaintiff alleges that Defendant Joe Mystick refused Plaintiff his prescribed medication and his wheelchair was taken away.   Plaintiff's post-operative instructions directed that he was to keep pressure off his toe and was to keep the operative site elevated for 24 to 48 hours.   DSUMF, ¶ 50.   Defendants filed a sworn affidavit by Dr. Wilkins who stated that keeping Plaintiff's toe non-weight bearing did not require Plaintiff to receive or utilize a wheelchair and that he could keep the toe non-weight bearing with the aid of crutches.   DSUMF, ¶ 52.   Similarly, Dr. Wilkins opined that keeping Plaintiff's foot elevated for a period of 24 to 48 hours did not require a wheelchair.   DSUMF, ¶ 53.

Plaintiff has failed to come forward with any competent evidence that his medication was taken away.   To the contrary, jail policy requires that inmates receive their prescribed medications, even when they are in administrative housing.   DSUMF, ¶ 26.

Accordingly, Defendants are entitled to summary judgment because in viewing the evidence in a light most favorable to Plaintiff, Defendants were not deliberately indifferent toward his medical needs.

### 3. Grievances and Retaliatory Discipline

Next, Plaintiff contends he was placed in disciplinary segregation in retaliation for his complaints about jail conditions and policies.   However, the undisputed evidence shows that Plaintiff was placed in administrative housing because of the incident with

Nurse Sartor. Specifically, Plaintiff was placed in administrative housing because Plaintiff violated the jail rules and regulations that prohibit threatening another with bodily harm, being insolent towards any staff member, and refusing to obey and order of any staff member. DSUMF, ¶ 56-61. Plaintiff provides no evidence that Defendants were motivated by an impermissible motive when placing him in administrative housing. Defendants are entitled to summary judgment on Plaintiff's retaliatory discipline claim. *See Goff v. Burton,* 7 F.3d 734, 738 (8th Cir. 1993) ("[I]f the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail.").

### 4. Conditions of Confinement

Plaintiff's final claim is that he was subjected to unconstitutional conditions of confinement. Specifically, Plaintiff contends he was constrained to a cold and unsanitary environment where he was denied blankets, bedding, and adequate clothing. Because Plaintiff's allegations are substantially similar to the one asserted in case no. 11-3286-CV-S-ODS, the Court will address the claim in Part III.C of this Opinion.

### B. Case No. 11-3299-CV-S-ODS

In this case, Plaintiff alleges he did not receive the appropriate number of calories during Ramadan resulting in weight loss, that is internal grievances were denied, and that he was placed in administrative segregation as a result of his attempts to obtain the requisite amount of food. The Court will now consider Defendants' Motion for Summary Judgment.

The governmental duty to protect at issue in this case is grounded in principles of safety and general well-being: "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter,

medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Butler v. Fletcher*, 465 F.3d 340, 344-45 (8th Cir. 2006) (quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200 (1989)). It is unclear from the Record whether Plaintiff was a pretrial detainee or was incarcerated after being adjudged guilty for a crime at the time Plaintiff was confined in this case. Nevertheless, pretrial detainees and convicted inmates, have the same right to basic human needs, thus, the same standard of care is appropriate. *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006).

The Eighth Amendment requires that inmates are provided with "nutritionally adequate food" and the failure to provide adequate nutrition may qualify as deliberate indifference. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). In *Wishon*, a prisoner alleged that prison officials were deliberately indifferent to his dietary needs. *Id.* The Eighth Circuit upheld the district court's decision and found that the prison officials were entitled to judgment as a matter of law because the inmate "presented no evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Id.*

Here, the undisputed evidence establishes that Plaintiff was provided with an appropriate diet that met his religious beliefs, as well as the constitutional requirements of the Eighth Amendment. DSUMF, ¶ 69, 76-79, 84. Further, the undisputed facts establish that Plaintiff received 3680 calories a day from his Ramadan diet, while the normal diet for a Greene County inmate was approximately 2800 to 3200 calories per day. DSUMF, ¶ 87. Plaintiff's Ramadan diet was even approved by a dietician. DSUMF, ¶ 84. Plaintiff has presented no evidence that the number of calories with which he was provided was nutritionally inadequate or that his food was prepared in a way that presented an immediate danger to his health.

Next, the undisputed evidence establishes that Capt. Clayton and other jail officials investigated Plaintiff's grievance that he did not receive the appropriate number of calories during Ramadan and took proper action to ensure that Plaintiff was receiving the adequate number of calories a day and was not losing weight. DSUMF, ¶, 83-84, 90.

16

Summary judgment is appropriate when prison supervisors investigate prisoner's grievances and take appropriate action. *See Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007) (finding no § 1983 liability when a prisoner supervisor investigated the prisoner's grievances and took corrective action).

Finally, in regard to Plaintiff's complaints about being placed in administrative segregation, the undisputed evidence establishes that Plaintiff was placed there as a result of violating the Rules and Regulations, which prohibit the trading or eating of another inmate's food, and not as a result of Plaintiff attempting to allegedly obtain the requisite amount of food. DSUMF, ¶ 85-86, 88-89.

Accordingly, Defendants are entitled to summary judgment on all of Plaintiff's claims in case no. 11-3299-CV-S-ODS.

C. Case No. 11-3286-CV-S-ODS

In this case, Plaintiff alleges he was subjected to unconstitutional conditions of confinement while he was in administrative segregation for 24 hours. In their Motion for Summary Judgment, Defendants contend that because Plaintiff was only placed in the observation cell for a period of 24 hours, such placement does not rise to the level of a constitutional violation. Further, Defendants argue they are entitled to summary judgment because written jail policy required that Plaintiff be placed in the observation cell pending psychological evaluation.

At the time of Plaintiff's confinement, he was a pretrial detainee. Accordingly, his claims are analyzed under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment's "cruel and unusual punishment" standard, which is used for convicted prisoners. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). "Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Stickley v. Byrd*, No. 12-1672, 2013 WL 141726 (8th Cir. 2013) (quoting *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010)). "However, because, under the Fourteenth Amendment, pretrial detainees are entitled to at least as great protection as that afforded convicted prisoners

17

under the Eighth Amendment, [courts] apply the identical deliberate-indifference standard as that applied to conditions-of-confinement claims made by convicts." *Crow v. Montogomery*, 403 F.3d 598, 601 (8th Cir. 2005) (internal quotations omitted). The totality of the circumstances should be reviewed in considering whether the pretrial detention conditions are unconstitutionally punitive. *Morris*, 601 F.3d at 810.

In this case, Plaintiff alleges that his cell was unclean because the inmates in the cell were forced to eat, sleep, and perform all bodily functions in the cell with other inmates. Plaintiff also asserts that the cell was cold and he was not given a blanket or bedding for his mattress. Finally, Plaintiff argues that he was not provided with his prayer rug or holy Quran. Other courts have found conditions far worse than Plaintiff's do not rise to the level of a constitutional violation. *See, e.g.*, *Goldman v. Forbus*, 17 Fed. App'x. 487, 488 2001 WL 8389997 (8th Cir. 2001) (unpublished per curiam) (no constitutional violation where pretrial detainee slept six nights on floor next to toilet); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no due process clause violation when a pretrial detainee was exposed to raw sewage for four days); *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (inmate's deprivation of clothes, running water, hygiene supplies, blanket, and mattress for four days did not violate Eighth Amendment rights); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (no constitutional violation where pretrial detainee was confined in unsanitary cell for eleven days). Even if Plaintiff's allegations were true that his cell was over-crowded, cold, unclean, the undisputed facts establish that Plaintiff was housed in administrative segregation for a mere 24 hours, (DSUMF, ¶ 64-66), and this brief period of time does not rise to the level of a constitutional violation. *See Hutto v. Finney*, 437 U.S. 678, 686 (1978) ("A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) (finding no constitutional violation given the brief 24 hour confinement).

Finally, the undisputed material facts establish that Plaintiff was placed in administrative confinement pursuant to jail policy that requires inmates to undergo a mental health evaluation. In support of Defendants' Motion for Summary Judgment, Capt. Kenneth Clayton filed an affidavit stating that pursuant to the written policy of the jail

18

division of the Greene County Sheriff's Office, Plaintiff having previously reported an attempted suicide and previously receiving mental health treatment, Plaintiff was placed in special housing pending risk assessment, treatment, and final disposition by the jail psychologist and/or medical department. DSUMF, ¶ 65. Plaintiff had previously reported that he suffered from depression, bipolar disorder, and schizophrenia. DSUMF, ¶ 34. Considering the totality of the circumstances, the Court finds that Plaintiff was placed in administrative segregation purely for psychological observation pursuant to jail policy, and not for punitive reasons, and the conditions did not violate Plaintiff's constitutional rights.

Accordingly, summary judgment will be granted in Defendant's favor in case no. 11-3286-CV-S-ODS.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. # 21) is granted.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: January 22, 2013          UNITED STATES DISTRICT COURT

19